FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.

★ MAY 2 5 2011 ★

BROOKLYN OFFICE

John J. Kuster
James D. Arden
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10022
(212) 839-7336
jkuster@sidley.com
jarden@sidley.com

CV 11 - 2507 

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

APPLE INC.:

               Plaintiff,         :

         -against-         :

FEI LIK LAM a/k/a PHILLIP LAM,     :
DUNWAH LAM, YUK LAM AND
WHITEIPHONE4NOW.COM

                         :

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

MAUSKOPF, J.

POHORELSKY, M.J.

**COMPLAINT**

Index No.

Plaintiff Apple Inc. ("Apple"), by its attorneys Sidley Austin LLP, as and

for its complaint against Fei Lik Lam a/k/a Phillip Lam, Dunwah Lam, Yuk Lam and

whiteiphone4now.com ("Defendants") alleges as follows:

## NATURE AND BASIS OF THE ACTION

1.      This action is brought by Apple Inc. ("Apple") under the Lanham

Act, 15 U.S.C. § 1051, *et seq.*, New York General Business Law §§ 349, 350, and 360-1

and the common law of New York, against Defendant Fei Lik Lam, a/k/a Phillip Lam

and his business whiteiphone4now.com, seeking damages relating to Defendant Lam's

infringing and diluting Apple's famous trademarks, in willful violation of the Lanham

Act (15 U.S.C. § 1051 et seq.) and for engaging in deceptive practices and unfair

competition in willful violation of New York state law.

2.     Defendant Lam willfully and without authorization has used Apple's trademarks in connection with the sale of his "White iPhone 4 Conversion Kits," which among other things included white front and back panels branded with Apple's logo and "iPhone" trademarks that are used in connection with the promotion and sale of Apple's well known iPhone 4 handheld mobile digital electronic devices.  Defendant at all times knew that Apple never has authorized the sale of white panels for its iPhone 4 mobile devices, and that he obtained these panels from sources that were not authorized by Apple or any of its suppliers to sell them.

3.     Defendants Dunweh Lam and Yuk Lam are the parents of Defendant Fei Lik Lam ("Defendants D&Y Lam").  These defendants aided and abetted Defendant Lam in his willful infringement of Apple's trademarks by allowing Defendant Lam to engage in the misconduct alleged herein and under their supervision.

4.     Apple owns the federally-registered trademark Apple logo and the trademark "iPhone" for use in connection with, among other things, telecommunications products and services.  Apple has invested enormous sums of money not only in research and development to ensure all of its products are of the highest quality, but also to advertise and publicize its Apple and iPhone trademarks, which are very successful and well known.

5.     Defendants were plainly aware of the existence and fame of Apple's trademarks, and of their value, and have intentionally and unlawfully misappropriated Apple's trademarks in order to profit from Apple's business and goodwill, in a manner that causes confusion among customers who may think that Apple has authorized the sale of white iPhones or released front and white panels for the

iPhones when in fact it has not, which dilutes the value of Apple's trademarks and compromises its business and relationship with its customers.

6.    As a result of Defendants' misconduct, Apple seeks to recover the injury and damages it has incurred, including but not limited to the recovery of the illegal profits Defendants gained from their misconduct and Apple's expenses in prosecuting this matter.

## PARTIES

7.    Plaintiff Apple Inc. is a corporation organized under the laws of California, with its principal place of business in Cupertino, California.  Apple designs, manufactures, and markets mobile communication and media devices, including the iPhone 4, among other products.  Since as early as 1977, Apple has continuously and exclusively used the iconic Apple logo to identify its products.   Additionally, since the introduction of its iPhone device in 2007, Apple has continuously and exclusively used its iPhone trademark to identify its mobile handheld electronic mobile devices.

8.    Defendant Fei Lik Lam, a/k/a Phillip Lam, is a minor residing at 13009 58th Avenue, Flushing, New York, 11355.

9.    Upon information and belief, defendant www.whiteiphone4now.com at all relevant times was a business owned, controlled and operated by Defendant Lam, and was a website registered in the name of Phillip Lam, 13009 58th Avenue, Flushing, New York, 11355.

10.   Defendants Dunwah and Yuk Lam are residents of New York residing at 13009 58th Avenue, Flushing, New York, 11355, and are the parents of Defendant Phillip Lam.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction pursuant to the 15 U.S.C.

§ 1121 and 28 U.S.C. §§ 1331, 1332, and 1338(a) and (b).  The Court has supplemental

jurisdiction over the claims arising under state law pursuant to 28 U.S.C. § 1367.

12.    The Court has personal jurisdiction over defendants because

defendants reside in this Judicial District and/or are doing business here or, alternatively,

because defendants are subject to personal jurisdiction under New York Civil Practice

Law and Rule § 302.

13.    Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391

because defendants are subject to personal jurisdiction in this Judicial District and

because a substantial portion of the conduct giving rise to Apple's claims occurred in this

Judicial District.

## ALLEGATIONS COMMON TO ALL CLAIMS

14.    Apple is a world-wide leading manufacturer of electronic devices,

including its mobile telecommunication devices commonly known as "iPhones."

Apple's iPhones have been extremely successful since their introduction into the

marketplace in 2007, and Apple started selling iPhone 4s to the public in June 2010.  The

iPhone 4 is one of the world's leading mobile handheld electronic telecommunications

devices.  Apple is an industry leader in mobile handheld devices market, and Apple has

spent millions of dollars and extensive resources on research and development of its

iPhones generally, and its iPhone 4 in particular.

15.    Since as early as 1977, Apple has continuously and exclusively

used the iconic Apple logo to identify its consumer electronics, computer software and

personal computer products.  Apple is owner of numerous valid, subsisting and existing

U.S. Federal trademark registrations, including but not limited to the Apple logo, Reg. Nos. 3,679,056 (the "Apple Logo") and iPhone trademark, 3,669,402 (the "iPhone Trademark") (collectively the "Apple Trademarks").   True and correct copies of the registrations of the Apple Trademarks are attached hereto as Exhibit A.

16.     The Apple Trademarks have become incontestable within the meaning of 15 U.S.C. § 1065.  Apple also owns valid and subsisting common law rights to the Apple Trademarks as a result of its extensive, continuous and exclusive use of these marks throughout the Untied States and the world to identify its distinctive electronic products and services, as well as its iPhone mobile handheld telecommunications devices.

17.     The Apple Logo and iPhone Trademark are distinctive, iconic and famous trademarks that are instantly recognized as indicating products and services created, designed, manufactured, produced and /or provided by Apple.

18.     Apple has adopted and utilized its Apple logo and iPhone Trademarks extensively in connection with the advertising, promotion, and sales of its iPhone 4 mobile telecommunications devices, which have appeared extensively on television, radio, internet and print media.   Apple's extensive marketing, advertising and promotion of its Apple Logo and iPhone Trademark have been highly successful, and within  a very short period of time, the Apple Trademarks became exceptionally well-known and famous throughout the United States and abroad.

19.     By virtue of Apple's substantial use, sales, advertising, and promotion of its Apple Logo and iPhone Trademarks throughout the United States and abroad, the enormous publicity and media attention accorded to the marks, and the

inherently distinctive nature of the marks, the Apple Trademarks have become well-known and famous marks, have become distinctive of Apple products and services, and have come to serve to identify and indicate the source of Apple's products and services to consumers, purchasers and others. Apple has developed for itself and its Apple and iPhone branded products and services substantial goodwill and excellent reputation among actual and potential consumers.

20.    In light of the distinctiveness of the Apple Trademarks, the duration and extent of Apple's sales, advertising, marketing, use and widespread publicity regarding its Apple Logo and iPhone Trademark throughout the United States, the Apple Trademarks are famous trademarks within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

**Defendants Misappropriation and Unauthorized Use of Apple's Trademarks**

21.    All iPhone 4 mobile handheld electronic devices that Apple has sold since its introduction to the market in June 2010 have utilized black front and back panels. The back panel contains the distinctive Apple Trademarks.

22.    Apple has not sold white front or back panels branded with the Apple Trademarks or otherwise for the iPhone 4 mobile devices anywhere in the United States or the world.

23.    Upon information and belief, Defendant Lam was aware at all relevant times that Apple has not authorized the sale of a white iPhone 4, or of any white front and back panels for its iPhone 4s branded with the Apple Trademarks.

24.    Upon information and belief, Defendant Lam commenced his website www.whiteiphone4now.com in or about July 2010, the sole business of which was to sell "White iPhone 4 Conversion Kits."

25.     According to Defendant Lam's website, the White iPhone 4 Conversion Kits included white front and back panels for the iPhone 4 branded with the Apple Trademarks.

26.     Defendant Lam's website stated that Apple had not authorized the sale of any White iPhone 4 mobile handheld telecommunication devices at all relevant times, and that it was Apple's intention to do so sometime in July 2011.

27.     Upon information and belief, Mr. Lam initially arranged for the purchase of the white front and back panels branded with the Apple Trademarks for his iPhone 4 Conversion Kits from an unauthorized supplier in Shenzhen Province in the People's Republic of China, whom he knew in turn had purchased these white panels from shops on the streets of Shenzhen.

28.     Defendant knew that the parts he was obtaining for his Kits were not authorized for sale by Apple. Defendant's supplier in China referred to its business as "Focusupply – Connection with Apple repair Parts and Friends with Foxconn Worker." Upon information and belief, Focusupply was owned and operated by Mr. Alan Yang, who resided in Shenzhen Province in the People's Republic of China.

29.     At all relevant times, Foxconn was an authorized manufacturer of electronics and parts for Apple in China, but Foxconn was not authorized by Apple to sell white front or back panels for the iPhone 4 to the market.

30.     Prior to commencing the Kits via his website, Defendant Lam asked Mr. Yang via instant messaging what relationship Focusupply had with Foxconn, and he was told that "I have a friend on [sic] this company."

31.     Defendant Lam knew or should have known that the white front
and back panels branded with Apple's Trademarks that he used in the White iPhone 4
Conversion Kits were not from authorized suppliers, dealers, or agents of Apple, or from
Apple itself.

32.     In or about July 3, 2010, Defendant Lam and Mr. Yang had
another electronic conversation, in which Mr. Yang stated that he changed couriers from
DHL to EMS over the last several shipments, because "back cover lens is original with
'Apple' Logo," and that he had "custom trouble on Hongkong custom," to which
Defendant Lam replied, "ah that's right, the trade mark issues."

33.     In or about July 9, 2010 Defendant Lam and Mr. Yang had another
electronic conversation in which Defendant Lam was asking about white front and back
panels for the iPhone 4.  Mr. Yang told Defendant Lam that "tomorrow will have three or
four may out from Foxconn, just take it easy," and Defendant Lam asked, "Foxconn sells
the parts?  Directly?" Mr. Yang then responded unequivocally, "no," to which Defendant
Lam then wrote, "oh."

34.     In yet another electronic conversation on or about July 13, 2010,
Mr. Yang advised Defendant Lam to use EMS for shipping "just to be safe," because
"las[t] week I have one shipment hold by hongkong [sic] custom due to the original apple
logo," to which Defendant Lam responded, "oh, that's too bad."

35.     Despite his knowledge that the white front and back panels he is
purchasing from Focusupply in China are unauthorized and not legal sales, Defendant
Lam nevertheless launched www.whiteiPhone4now.com, and registered that domain
name using the Apple Trademarks without the consent of Apple in July 2010.

36.   In his website, Defendant Lam offered White iPhone 4 Conversion Kits to convert black iPhone 4 mobile devices to white utilizing white front and back panels branded with Apple's Logo and iPhone Trademarks for sale to the general public. Defendant Lam feature pictures of white iPhone 4 front and back panels branded with the Apple Trademarks prominently in his website.

37.   A true and correct excerpt from his website in which Mr. Lam used Apple's Trademarks is attached hereto as Exhibit B.

38.   Defendant Lam sold the White iPhone 4 Conversion Kits for approximately $129 to $279 per Kit.

39.   On numerous occasions, Defendant Lam publicized to industry press and on the internet that consumers could convert their iPhone 4 devices to "white" iPhone 4s by utilizing his White iPhone4 Conversion Kits, which included white panels branded with the Apple Trademarks. Defendant Lam boasted that his sales as of November 2010 exceeded $130,000.

40.   At all relevant times, Defendant Lam operated his whiteiphone4now.com business at 13009 58th Avenue, Flushing, New York, 11355.

41.   At all relevant times, Defendants D&Y Lam were the parents and/or guardians of Defendant Lam.  Because Defendant Lam was a minor at all relevant times when www.whiteiphone4now.com was operating, Defendants D&Y Lam, as his parents, were responsible for his supervision and actions while Defendant Lam lived in and conducted illegal activities in their residence.  Upon information and belief, Defendants D&Y Lam were aware of and/or willfully ignorant about Defendant Lam's whiteiphone4now.com business activities, and did nothing to  prevent Defendant Lam

from the unauthorized sale of goods as branded with Apple's Trademarks as part of his White iPhone 4 Conversion Kits.

42.     In November 2010, Defendant Lam was warned that the sales of white front and back panels branded with Apple's Trademarks were not authorized. Thereafter, Defendant Lam made no attempt to contact Apple to determine whether any sales of white front and back panels branded with Apple Trademarks was authorized, and continued to sell Apple's stolen property in blatant disregarded of Apple's rights.

43.     On December 1, 2010, Apple served a cease and desist letter on Defendant Lam's attorney, and on that same day served a cease and desist letter on Defendant Dunwah Lam.

44.     Later that day, on December 1, 2010, the www.whiteiPhone4now.com website was no longer available on the internet.

45.     Defendants have never been authorized to sell any Apple products, or to use any of Apple's Trademarks in connection with their business, services or products.

46.     Defendant Lam's use of the Apple Trademarks in his website's domain name, throughout his website (including photographs) and on the panels in his iPhone Conversion Kits confused and deceived purchasers and the consuming public as to the source or origin of the Apple products being sold, advertised and promoted by Defendant Lam.  Actual and potential purchasers and consumers in New York, and in this Judicial District and throughout the United States, upon visiting Defendant Lam's website,  www.whiteiPhone4now.com, likely believed that Mr. Lam's panels branded

with the Apple Trademarks for the iPhone 4 were properly licensed, approved, sponsored or endorsed by Apple for sale when they are in fact not.

47.     As a result of Defendant Lam's illegal and unauthorized sales, as well as the result of Defendants D&Y Lams' negligent supervision and/or willful blindness to the misconduct of their son, Defendant Lam, Apple's business and good will has been irreparably harmed and Apple is entitled to permanent injunctive relief enjoining Defendants from any attempt to sell White iPhone 4 Conversion Kits utilizing panels branded with Apple's Trademarks, including without limitation any use of the Apple Trademarks to advertise, promote or sell such Kits and/or panels, and to permanently cease any use of the www.whiteiPhone4now.com website. Defendants also have failed to return the ill-gotten gains and profits they obtained through their misconduct.

## FIRST CLAIM FOR RELIEF
### Trademark Infringement Under 15 U.S.C. § 1114(1)

48.     Apple repeats and realleges paragraphs 1 through 47 of this complaint as if fully set forth herein.

49.     This claim is for infringement of trademarks registered in the United States Patent and Trademark Office, pursuant to Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), as amended.

50.     Defendant Lam knew that Apple never authorized the sale of white iPhone 4 front and back panels to anyone.

51.     Apple has never authorized the sale of white iPhone 4 mobile telecommunications devices or the sale of white front and back panels branded with the Apple Trademarks for the iPhone 4, in any market in the world.

52.     Defendants' unauthorized use of the Apple Trademarks caused confusion and deceived the public as to the approval, sponsorship, license, quality, manufacturing processes, and sources of origin of Apple's goods and services associated with the panels branded with the Apple Trademarks that are part of Defendant Lam's iPhone Conversion Kits.

53.     Defendants D&Y Lam permitted Defendant Lam to engage in this unlawful conduct out of their home and while under their supervision, and upon information and belief also are beneficiaries of Defendant Lam's illicit business operations.

54.     On information and belief, Defendant Lam's infringement of the federally registered Apple Trademarks has been willful and deliberate, and designed to trade on Apple's goodwill associated with the Apple Trademarks, and Defendants have profited and been unjustly enriched by sales and publicity that they would not otherwise have obtained but for his unlawful conduct.

55.     As a result of Defendants' misconduct, Apple's business and good will has been irreparably harmed and Apple is entitled to permanent injunctive relief against Defendants.   Defendants also must disgorge the ill-gotten gains and profits they obtained through their misconduct, and to compensate Apple for its expenses, including attorneys' fees, in connection with prosecuting this matter.

## SECOND CLAIM FOR RELIEF
### False Designation of Origin Under 15 U.S.C. § 1125

56.     Apple repeats and realleges paragraphs 1 through 55 of this Complaint as if fully set forth herein.

57.     This claim is for false designation of origin, false endorsement and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), as amended.

58.     By their unauthorized use of the Apple Trademarks as described above, Defendant Lam has falsely designated the origin of his services and products and Defendant Lam has thereby competed unfairly with Apple and engaged in acts of false designation of origin and false sponsorship, in violation of 15 U.S.C. § 1125(a).

59.     Defendant Lam's acts of false designation of origin, false sponsorship and unfair competition have been done willfully and deliberately and he has profited and been unjustly enriched by sales and publicity that he would not have otherwise have obtained but for his unlawful conduct.

60.     Defendants D&Y Lam permitted Defendant Lam to engage in this unlawful conduct out of their home and while under their supervision, and upon information and belief also are beneficiaries of Defendant Lam's illicit business operations.

61.     As a result of Defendants' misconduct, Apple's business and good will has been irreparably harmed and Apple is entitled to permanent injunctive relief against Defendants.  Defendants also must disgorge the ill-gotten gains and profits they obtained through their misconduct, and to compensate Apple for its expenses, including attorneys' fees, in connection with prosecuting this matter.

## THIRD CLAIM FOR RELIEF

### Federal Trademark Dilution Under 15 U.S.C. § 1125(c)

62.     Apple repeats and realleges paragraphs 1 through 61 of this Complaint as if fully set forth herein.

63.     This claim is for trademark dilution pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(c).

64.     The Apple logo and iPhone Trademarks are distinctive and famous within the meaning of 15 U.S.C. § 1125(c)(1) and were distinctive and famous prior to the date of Defendant Lam's unauthorized use of the Apple Trademarks in his website and otherwise.

65.     Defendant Lam willfully intended to trade on Apple's reputation and good will, and the unauthorized use described above dilutes the distinctive quality of Apple's famous, registered Apple Trademarks in violation of 15 U.S.C. § 1125(c).

66.     Defendants D&Y Lam permitted Defendant Lam to engage in this unlawful conduct out of their home and while under their supervision, and upon information and belief also are beneficiaries of Defendant Lam's illicit business operations.

67.     As a result of Defendants' misconduct, Apple's business and good will has been irreparably harmed and Apple is entitled to permanent injunctive relief against Defendants.  Defendants also must disgorge the ill-gotten gains and profits they obtained through their misconduct, and to compensate Apple for its expenses, including attorneys' fees, in connection with prosecuting this matter.

## FOURTH CLAIM FOR RELIEF

### Common Law Trademark Infringement

68.     Apple repeats and realleges paragraphs 1 through 67 of this Complaint as if fully set forth herein.

69.     This claim is for trademark infringement and unfair competition in violation of the common law of the State of New York.

70.     Defendants' use of the Apple Trademarks, as described above, constitute common law trademark infringement and unfair competition in violation of common law.

71.     Upon information and belief, Defendants' unlawful conduct described above has been done willfully and deliberately and defendants have profited and been unjustly enriched by sales and publicity that defendants would not otherwise have obtained but for their unlawful conduct.

72.     Defendants D&Y Lam permitted Defendant Lam to engage in this unlawful conduct out of their home and while under their supervision, and upon information and belief also are beneficiaries of Defendant Lam's illicit business operations.

73.     As a result of Defendants' misconduct, Apple's business and good will has been irreparably harmed and Apple is entitled to permanent injunctive relief against Defendants.  Defendants also must disgorge the ill-gotten gains and profits they obtained through their misconduct, and to compensate Apple for its expenses, including attorneys' fees, in connection with prosecuting this matter.

## FIFTH CLAIM FOR RELIEF

### Deceptive Acts and Practices Under
### New York Gen. Bus. Law §§ 133, 349-50, 360-1

74.     Apple repeats and realleges paragraphs 1 through 73 of this
Complaint as if fully set forth herein.

75.     This claim is for false advertising and deceptive acts and practices
under New York General Business Law Sections 349-50, *et seq.*

76.     Defendants use of the Apple Trademarks, as described above, have
caused mistake or deception among consumers and the public in the State of New York.

77.     Defendants' use of the Apple Trademarks, as described above,
constituted false advertising and deceptive acts and practice in violation of New York
General Business Law Sections 349-50, *et seq.*

78.     Defendants unauthorized use of the Apple Logo, as described
above, was done  with the intent to deceive or mislead the public in violation of New
York General Business Law Section 133.

79.     Upon information and belief, Defendants' unlawful conduct
described above has been done willfully and deliberately and defendants have profited
and been unjustly enriched by sales and publicity that defendants would not otherwise
have obtained but for their unlawful conduct.

80.     Defendants D&Y Lam permitted Defendant Lam to engage in this
unlawful conduct out of their home and while under their supervision, and upon
information and belief also are beneficiaries of Defendant Lam's illicit business
operations.

81.     As a result of Defendants' misconduct, Apple's business and good will has been irreparably harmed and Apple is entitled to permanent injunctive relief against Defendants pursuant to New York Gen. Bus. Law Section 360-1.  Defendants also must disgorge the ill-gotten gains and profits they obtained through their misconduct, and to compensate Apple for its expenses, including attorneys' fees, in connection with prosecuting this matter.

### SIXTH CLAIM FOR RELIEF
### Aiding and Abetting Trademark Infringement Against Defendants D&Y Lam

82.     Apple repeats and realleges paragraphs 1 through 81 of this Complaint as if fully set forth herein.

83.     Defendants D&Y Lam are the parents of Defendant Lam.

84.     At all relevant times, Defendant Lam had not reached the age of majority under New York law.

85.     Defendant Lam engaged in the willful violations of the Lanham Act, including trademark infringement, through his unauthorized sale of goods branded with Apple's Trademarks, as described above.

86.     Defendants D&Y Lam allowed Defendant Lam to use their residence in connection with the operation of the www.whiteiphone4now.com website, which was registered by Defendant Lam using Defendants D&Y Lam's residence for the address, and permitted their residence to be used in connection with the unlawful sales of White iPhone Conversion Kits and use of the Apple Trademarks.

87.     Defendants D&Y Lam knew Defendant Lam was engaged in the unauthorized and unlawful sale of Apple products as described above, and/or chose to be willfully blind to the illegal business being operated by their son out of their home, such

that Defendants D&Y Lam engaged in contributory trademark infringement of the Apple Trademarks.

88. Upon information and belief, Defendants D&Y Lam knew that Defendant Lam was profiting from his lawful conduct described above, and were the beneficiaries and/or shared in the illegal profits taken by Defendant Lam.

89. As a result of Defendants' misconduct, Apple's business and good will has been irreparably harmed and Apple is entitled to permanent injunctive relief against Defendants. Defendants also must disgorge the ill-gotten gains and profits they obtained through their misconduct, and to compensate Apple for its expenses, including attorneys' fees, in connection with prosecuting this matter.

**PRAYER FOR RELIEF**

WHEREFORE, Apple prays that this Court enter judgment against Defendants as follows:

a. Ordering that Defendants be adjudged to have violated Sections 32, 433(a) and 43(c) of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a) and 1125(c), to have committed acts of trademark infringement and unfair competition in violation of state common law, and to have committed unfair competition and deceptive acts in violation of New York Gen. Bus. Law §§ 133, 149 and 350 *et seq.*;

b. Ordering an accounting of all gains, profits, savings and advantages realized by Defendants for their aforesaid acts of trademark infringement, trademark dilution, unfair competition, false designation of origin, false advertising and deceptive acts and practices;

c.     Awarding such damages as Apple shall establish in

consequence of Defendants' aforesaid acts of trademark infringement, trademark

dilution, unfair competition, false designation of origin, false advertising and

deceptive acts and practices, together with appropriate interest thereon, including

disgorgement of Defendants' ill-gotten gains from the aforesaid acts, as well as

three times the amount found as actual damages by the trier of fact to properly

compensate Apple for its damages pursuant to 15 U.S.C. §§ 1117(a), and,

pursuant to New York Gen. Bus. Law § 349(h), statutory damages of $1,000 for

each violation, together with appropriate interest thereon; and

d.     Ordering defendants to deliver to Apple any and all goods

and products, product packaging, promotional materials, advertisements, or other

items in the possession, custody or control of Defendants which, if sold, displayed

or used would constitute further aforesaid acts of trademark infringement,

trademark dilution, unfair competition, false designation of origin, false

advertising and deceptive acts and practices;

e.     Awarding Apple its costs and expenses in this action,

including attorneys' fees pursuant to 15 U.S.C. § 1117, as Defendants' acts were

willful, deliberate and exceptional;

f.     Granting a permanent injunction restraining Defendants

and all others in privity or active in concert or participation with any of them,

from engaging in any of the aforesaid acts of trademark infringement, trademark

dilution, unfair competition, false designation of origin, false advertising and

deceptive acts and practices, as Apple will suffer irreparable harm in the absence

of such relief, and any damages recovered from Defendants will be insufficient to make Apple whole.  Apple respectfully requests that the Court issue a permanent injunction to enjoin Defendants, their agents and all persons in active concert and participation with them, from directly or indirectly:  (i)  using the Apple Trademarks in connection with the advertising, promotion or offering for sale the White iPhone Conversion Kits and/or white front and back iPhone panels branded with the Apple Trademarks; (ii) using the domain name and website, www.whiteiphone4now.com to advertise, promote or offer for sale the White iPhone Conversion Kits and/or white front and back iPhone 4 panels branded with the Apple Trademarks; and (iii) using any trade practices whatsoever, including those complained of herein and the unauthorized sale of any products branded with Apple Trademarks, which tend to unfairly compete with or injure Apple's business and the good will appertaining thereto; and

        g.     Granting Apple such other and further relief as the Court deems just and appropriate.

Dated: New York, New York
May 25, 2011

                 SIDLEY AUSTIN LLP

By: _____

                 John J. Kuster
                 James D. Arden
                 787 Seventh Avenue
                 New York, New York 10019
                 (212) 839-7336
                 jkuster@sidley.com
                 jarden@sidley.com

                 Attorneys for Plaintiff Apple Inc.

Int. Cl.: 9

Prior U.S. Cls.: 21, 23, 26, 36 and 38

**Reg. No. 3,679,056**

## United States Patent and Trademark Office

Registered Sep. 8, 2009

### TRADEMARK
#### PRINCIPAL REGISTER



APPLE INC. (CALIFORNIA CORPORATION)
1 INFINITE LOOP
CUPERTINO, CA 95014

FOR: COMPUTERS; COMPUTER HARDWARE; COMPUTER PERIPHERALS; HANDHELD COMPUTERS; HANDHELD MOBILE DIGITAL ELECTRONIC DEVICES FOR RECORDING, ORGANIZING, TRANSMITTING, MANIPULATING, AND REVIEWING TEXT, DATA, IMAGE, AUDIO, AND AUDIOVISUAL FILES, FOR THE SENDING AND RECEIVING OF TELEPHONE CALLS, ELECTRONIC MAIL, AND OTHER DIGITAL DATA, FOR USE AS A DIGITAL FORMAT AUDIO PLAYER, HAND-HELD COMPUTER, PERSONAL DIGITAL ASSISTANT, ELECTRONIC ORGANIZER, ELECTRONIC NOTEPAD, CAMERA, AND GLOBAL POSITIONING SYSTEM (GPS) ELECTRONIC NAVIGATION DEVICE; DIGITAL AUDIO AND VIDEO RECORDERS AND PLAYERS; PERSONAL DIGITAL ASSISTANTS; ELECTRONIC ORGANIZERS; CAMERAS; TELEPHONES; MOBILE PHONES; SATELLITE NAVIGATIONAL SYSTEMS, NAMELY, GLOBAL POSITIONING SYSTEMS (GPS); ELECTRONIC NAVIGATIONAL DEVICES, NAMELY, GLOBAL POSITIONING SATELLITE (GPS) BASED NAVIGATION RECEIVERS; COMPUTER GAME MACHINES FOR USE WITH EXTERNAL DISPLAY SCREENS, MONITORS, OR TELEVISIONS; A FULL LINE OF ACCESSORIES AND PARTS FOR THE AFOREMENTIONED GOODS; STANDS, COVERS, CASES, HOLSTERS, POWER ADAPTORS, AND WIRED AND WIRELESS REMOTE CONTROLS FOR THE AFOREMENTIONED GOODS; COMPUTER MEMORY HARDWARE; COMPUTER DISC DRIVES; OPTICAL DISC DRIVES; COMPUTER NETWORKING HARD-

WARE; COMPUTER MONITORS; FLAT PANEL DISPLAY MONITORS; COMPUTER KEYBOARDS; COMPUTER CABLES; MODEMS; COMPUTER MICE; ELECTRONIC DOCKING STATIONS; SET TOP BOXES; BATTERIES; BATTERY CHARGERS; ELECTRICAL CONNECTORS, WIRES, CABLES, AND ADAPTORS; DEVICES FOR HANDS-FREE USE; HEADPHONES; EARPHONES; EAR BUDS; AUDIO SPEAKERS; MICROPHONES; AND HEADSETS; A FULL LINE OF COMPUTER SOFTWARE FOR BUSINESS, HOME, EDUCATION, AND DEVELOPER USE; USER MANUALS FOR USE WITH, AND SOLD AS A UNIT WITH, THE AFOREMENTIONED GOODS; DOWNLOADABLE AUDIO AND VIDEO FILES, MOVIES, RING TONES, VIDEO GAMES, TELEVISION PROGRAMS, POD CASTS AND AUDIO BOOKS VIA THE INTERNET AND WIRELESS DEVICES FEATURING MUSIC, MOVIES, VIDEOS, TELEVISION, CELEBRITIES, SPORTS, NEWS, HISTORY, SCIENCE, POLITICS, COMEDY, CHILDREN'S ENTERTAINMENT, ANIMATION, CULTURE, CURRENT EVENTS AND TOPICS OF GENERAL INTEREST, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 1-31-1977; IN COMMERCE 1-31-1977.

OWNER OF U.S. REG. NOS. 1,114,431, 2,753,069 AND OTHERS.

THE MARK CONSISTS OF THE DESIGN OF AN APPLE WITH A BITE REMOVED.

SER. NO. 77-648,705, FILED 1-13-2009.

JERI J. FICKES, EXAMINING ATTORNEY

**Int. Cl.: 9**

**Prior U.S. Cls.: 21, 23, 26, 36 and 38**

**Reg. No. 3,669,402**

**United States Patent and Trademark Office**   Registered Aug. 18, 2009

## TRADEMARK
### PRINCIPAL REGISTER

# iPhone

APPLE INC. (CALIFORNIA CORPORATION)
1 INFINITE LOOP
CUPERTINO, CA 95014

FOR: HANDHELD MOBILE DIGITAL ELECTRO-
NIC DEVICES FOR THE SENDING AND RECEIV-
ING OF TELEPHONE CALLS, ELECTRONIC MAIL,
AND OTHER DIGITAL DATA, FOR USE AS A
DIGITAL FORMAT AUDIO PLAYER, AND FOR
USE AS A HANDHELD COMPUTER, PERSONAL
DIGITAL ASSISTANT, ELECTRONIC ORGANIZER,
ELECTRONIC NOTEPAD, AND CAMERA, IN
CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 1-9-2007; IN COMMERCE 1-29-2007.

THE MARK CONSISTS OF STANDARD CHAR-
ACTERS WITHOUT CLAIM TO ANY PARTICULAR
FONT, STYLE, SIZE, OR COLOR.

PRIORITY CLAIMED UNDER SEC. 44(D) ON
TRINIDAD/TOBAGO APPLICATION NO. 37090,
FILED 3-27-2006.

SEC. 2(F).

SER. NO. 77-975,076, FILED 9-26-2006.

LINDA ESTRADA, EXAMINING ATTORNEY

White iPhone 4 - WhiteiPhone4Now.com



# WhiteiPhone4Now | You **don't** have to wait until *Spring of 2011*...

**Home**   **Photos**   **Conversion Help**   **Terms of Conditions**   **Contact Us**





**$279**   Temporary Price Cut!
~~$295~~
Buy Full Conversion Kit



**$135**
Buy ONLY the Back Panel

**$169**
Buy ONLY the Front Panel + Home Button

- International Shipping for just *$20*

- *Shipment will be delayed for 5-8 day due to crazy demand. 3-5 day delivery once shipped.*

- **Item is sold as repair/replacement parts and AS IS**

We are Featured On and more:





# White iPhone 4 Conversion Kit

Release date for the White iPhone 4 has been delayed until Spring of 2011 and some even speculated that it may never see an official launch!

*Own the black iPhone 4 but want the White model?* We offer competitively priced parts needed to convert your current black iPhone 4 to a White iPhone 4 yourself (or a technician) with this easy to follow guide.

### Statistics:

White iPhone 4 Owners: **500**

Black iPhone 4 Owners: **14,000,000**

**Disclaimer:** Pulling out your White iPhone 4 in public may attract crowds of people gathering around you.

## Testimonials



*"This White iPhone 4 Conversion kit is easy rocks. Totally makes my iPhone stand out from the rest and finally have the **White iPhone 4** I've been wanting all along. Thanks!"* - Douglas (San Diego)



*"Great product, eye catcher. Hands down one of the best sellers online, great costumer service, amazing communication A++"* - Khaled S.

# What's Included in the Full Kit?





**(1)** White **Back Panel** (Pre-Assembled)

- Back Glass with Camera Lens & LED Diffuser
- Supporting Plate

**(2)** White **Front Panel** (Pre-Assembled)

- Retina Display
- Supporting Frame
- Front Glass
- Digitizer/Touch Panel

**(3)** White **Home Button**

**(4)** **Opening Tools, Protective Case** and **Screen Protector**

# Why Buy From Us?

Compared to the others, you're *saving* $180-300 when you buy from us. And of course speedy customer service. Not to mention we always have the latest model of parts and all parts in stock ready to ship. That's why FaceBook employees, undisclosed celebrities, accessory makers, and more buy from us.

*"Excellent product and even better customer service. Received my product 5 days after I ordered! The items were exactly as described, BRAND SPANKING NEW!"* - SWT



*"I was able to convert my iPhone 4 into a white one in less than an hour! Great kit and much cheaper than buying from other places! The white stands out a lot more than the black which makes it look truly brilliant."* - Tom Harris, Founder of _____



*"The kit was Great! Was able to convert my black iPhone 4 to white in 20 minutes! Great attention grabber and ice breaker."* - Ukrit P.



*"Great kit with easy to follow instructions through the website. This site rocks! finally have a white iphone 4!"* - Joeden C.

tagged S White iPhone 4 in S White iPhone 4

WHITEIPHONE4NOW.COM IS NOT AFFILIATED WITH APPLE, INC. ALL TRADEMARKS ARE THE PROPERTY OF THEIR RESPECTIVE OWNERS.